UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LISA LOMBARDO,

        Plaintiff,

    v.

TRANS UNION LLC, and JPMORGAN CHASE BANK, N.A.,

        Defendants.

Case No.: 7:20-cv-06813-VB-AEK

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF COURT'S DENIAL OF JPMORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT AS TO FIRST CAUSE OF ACTION OF SECOND AMENDED COMPLAINT

On Memorandum:

    Christopher B. Turcotte, Esq.

                                      TURCOTTE LAW, P.C.
                                      575 Madison Avenue, Suite 1006
                                      New York, New York  10022
                                      (212) 937-8499
                                      *Attorneys for Defendant JPMorgan Chase Bank, N.A.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... (ii)

PRELIMINARY STATEMENT ..... 1

RELEVANT PROCEDURAL HISTORY ..... 2

LEGAL ARGUMENT

    **POINT I**

    STANDARD OF REVIEW ..... 4

    **POINT II**

    BASED ON THE COURT'S FINDING THAT THE AUTO LEASE IS AMBIGUOUS AS TO WHETHER PLAINTIFF OWED THE VEHICLE'S RESIDUAL VALUE AND CHASE HAD THE RIGHT TO CHARGE IT OFF, PLAINTIFF'S CHALLENGE OF THE CHARGE OFF CANNOT MEET *SESSA*'S "OBJECTIVELY AND READILY VERIFIABLE" STANDARD ..... 5

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

Cases

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36 (2d Cir. 2012) ……………..…… 5

*Baldeosingh v. TransUnion, LLC*, 2021 WL 1215001 (M.D. Fl. Mar. 31, 2021) ……...…  12, 13

*Batterman v. BR Carroll Glenridge, LLC*, 829 Fed.Appx. 478 (11th Cir. Oct. 7, 2020)....11-12, 13

*Cunningham v. Trans Union, LLC*, 2023 WL 6823182 (S.D. Ohio Oct. 11, 2023) ……..…  12-13

*Doe v. N.Y. City Dep't of Soc. Servs.*, 709 F.2d 782 (2d Cir. 1983) ……..…….……………..…  4

*Gelman v. Ashcroft*, 372 F.3d 495 (2d Cir. 2004)..…………………………………….………..…  7

*Gross v. CitiMortgage, Inc*., 33 F.4th 1246 (9th Cir. 2022)…...………………………………… 13

*In re Belton*, 2019 WL 1017293 (S.D.N.Y. Mar. 4, 2019) ......................................................…  5

*In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298 (S.D.N.Y. 2012)…………………………....…  4-5

*Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264 (2d Cir. 2023)………………………….. 6-8, 13

*Ritz v. Nissan-Infiniti LT*, 2023 WL 3727892 (D.N.J. May 30, 2023).………………….....  9-11

*Rosenberg v. Equifax Information Services, LLC*,
    2020 WL 4253063 (D.N.J. July 16, 2020)…………………………………………… 13

*Sessa v. Trans Union, LLC*, 74 F.4th 38 (2d Cir. 2023) …...………..….…… 1, 2, 5, 7-8, 12, 13, 14

*Shulman v. Lendmark Financial*, 2022 WL 16700301 (D.S.C. Sept. 6, 2022), *report and*
    *recommendation adopted*, 2022 WL 7967304 (D.S.C. Oct. 14, 2022)………......….… 12

*Suluki v. Credit One Bank, NA*, 2023 WL 2712441 (S.D.N.Y. Mar. 30, 2023)........................… 13

*Wilson v. Suntrust Bank, Inc.*, 533 F.Supp.3d 1363 (S.D. Ga. 2021)…………..…..……… 12, 13

Statutes

15 U.S.C. § 1681................................................................................................................... 1

**PRELIMINARY STATEMENT**

In *Sessa v. Trans Union, LLC*, 74 F.4th 38 (2d Cir. 2023), the Second Circuit recently clarified that the *sine qua non* of a viable claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, is that the alleged inaccuracy be "objectively and readily verifiable." In its bench ruling rendered on September 27, 2023, the Court applied this standard in finding that defendant JPMorgan Chase Bank, N.A. ("Chase") is not entitled to summary judgment as to the First Cause of Action of plaintiff Lisa Lombardo's ("Plaintiff") Second Amended Complaint because she raises a genuine issue of material fact as to whether a charge-off was inaccurately applied to her auto lease account and whether Chase conducted a reasonable investigation of her dispute. The Court's bench ruling further granted Chase's motion for summary judgment as to Plaintiff's UCC (Fourth Cause of Action), and breach of contract (Fifth Cause of Action) claims in connection with Chase's repossession of Plaintiff's leased vehicle, but otherwise denied the motion as to these counts.

It is axiomatic that the propriety of the charge-off derives from the rights of the parties under Plaintiff's auto lease (the "Lease"). However, in denying summary judgment on that portion of the breach of contract claim outside of Chase's proper repossession of the vehicle, the Court determined that the Lease is ambiguous as to whether Plaintiff owed the residual value of the vehicle if she kept it after the Lease expired and Chase's consequent right to charge off this amount. Although Chase maintains the Lease is clear as to these legal rights, insofar as the Court concluded that the Lease's "Default" section "does not clearly and unambiguously" entitle Chase to charge off the vehicle's residual value (with related fees and taxes) based upon Plaintiff's failure to purchase or return the vehicle at the Lease's end of term (as the Lease clearly requires), this cannot be squared with *Sessa*'s mandate that the alleged inaccuracy – here, the charge-off – must be objectively and readily verifiable to constitute a viable FCRA violation.

Accordingly, Chase makes this motion for reconsideration of the Court's denial of its motion for summary judgment with respect to Plaintiff's FCRA claim.

## RELEVANT PROCEDURAL HISTORY

On November 28, 2022, Chase filed its motion for summary judgment, seeking dismissal of Plaintiff's FCRA (First Cause of Action), UCC (Fourth Cause of Action), and breach of contract (Fifth Cause of Action) claims.

On February 3, 2023, Plaintiff filed its opposition to the motion. On February 24, 2023, Chase filed its reply.

On July 21, 2023, the Court issued a summary order, which states in relevant part:

> Defendant's motion for summary judgment (Doc. #164) is GRANTED IN PART and DENIED IN PART. All of plaintiff's claims will go forward except for her claims that defendant, by repossessing the vehicle, breached the lease and violated the Connecticut UCC. To be clear, the breach of contract and UCC claims shall proceed, except to the extent they are predicated upon the repossession of the vehicle.
>
> A case management conference is scheduled for August 29, 2023, at 3:30 p.m., at which time the Court will issue a bench ruling explaining the basis for its decision.

ECF No. 196.[1] The case management conference was rescheduled for September 27, 2023. ECF No. 198.

In its September 27, 2023 bench ruling, the Court, in connection with its denial of summary judgment as to Plaintiff's FCRA claim, found that "under *Sessa*, … [t]he pertinent question here is whether Lombardo has raised a trial issue as to the accuracy of the charge-off, *and if so*, the reasonableness of Chase's investigation." *See* Transcript of 9-27-23 Bench Ruling ("Tr.") annexed

---

[1] On July 20, 2023, Plaintiff filed a Notice of Supplemental Authority, concerning the Second Circuit's issuance of its decision in *Sessa v. Trans Union, LLC*, 74 F.4th 38 (2d Cir. 2023). ECF No. 195. The Court entered its summary order the next day. ECF No. 196. Accordingly, this is Chase's first opportunity to address the import of the *Sessa* decision.

2

to Declaration of Christopher B. Turcotte dated October 25, 2023 as Ex. 1, at 16:22-17:2 (emphasis added).

In analyzing the accuracy of the charge-off here, the Court, while acknowledging that all of the Chase representatives (six in total [*see* Chase Statement of Material Facts ("SOMF")[ECF No. 169], at ¶26]) deposed on the subject testified that Chase's policy at the relevant time was to calculate the time for charge-off from the *original* maturity date of the Lease and not the expiration date of any extended lease term, held Chase's written charge-off policy's use of the phrase "over term" is not clear as to whether it refers to the original maturity date or extended maturity date. *Id.* at 11:3-7, 17:14-18. Based on the wording of a superseding Chase charge-off policy which took effect several months after Lombardo's charge-off, the Court also concluded a "reasonable inference" could be drawn that "delinquency for charge-off purposes is properly measured from the extended expiration date." *Id.* at 17:18-18:1. The Court found as well that Plaintiff raised a triable issue of fact as to the reasonableness of Chase's investigation based on the time spent reviewing the dispute, the alleged failure to review all documentation submitted by Plaintiff, and related considerations. *Id.* at 18:5-14.

Addressing Chase's motion as to Plaintiff's breach of contract and UCC claims, the Court found that "both turn on whether Lombardo performed under, and whether Chase breached, the lease." *Id.* at 19:15-17. In denying in part Chase's motion on these claims, the Court held:

> I reject Lombardo's argument that she can pay only the $300 disposition fee and keep the car past her lease expiration. It seems to make sense that if she kept the car, she would owe the value of the car to Chase. However, ***I do not think it is clear from the language of the lease*** that the full residual value of the car is due as part of – and I am quoting from the lease – 'other payments that may become due after the end of the lease term.'
>
> Here, Chase sent Lombardo a letter following repossession that, when considered in a light most favorably to Lombardo, ***could be read to imply*** that she had to pay

3

> the residual value merely to clear her debt to Chase, not purchase the vehicle, which is also ***not a remedy clearly provided in the lease***.
>
> Thus, ***because the lease does not clearly and unambiguously provide that Lombardo would owe the residual value of the car if she kept it after her lease expired***, Chase is not entitled to judgment as a matter of law on that ground.

*Id*. at 20:4-21 (emphasis added). The Court also found that while "[o]f course, Lombardo was not entitled to keep the car past the lease expiration date without purchasing it … a reasonable jury could conclude that Chase did not provide Lombardo with a good faith opportunity to purchase the vehicle on an as-is where-is basis at the scheduled lease termination under Section 30 of the lease." *Id*. at 20:24-21:6.

Finally, the Court granted Chase's motion insofar as it found that the argument that Chase breached the Lease or the UCC by repossessing the car cannot survive summary judgment, finding:

> Section 28 of the lease unambiguously provides that Chase could take possession of the vehicle if she was in default. Lombardo held onto the car until February 2018, far past the November 12, 2017, lease expiration date; and the lease clearly provides that she was required to return or purchase the vehicle by that time. That entitled Chase to repossess the vehicle under the lease.

*Id*. at 22:4-10. In this regard, Plaintiff's efforts to remove the charge-off "does not allow her to keep a car she doesn't own." *Id*. at 22:11-14.

## LEGAL ARGUMENT

### POINT I

### STANDARD OF REVIEW

To prevail on a motion for reconsideration, the movant must demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Doe v. N.Y. City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983). The motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked and that might reasonably be expected to alter the conclusion

4

reached by the court." *In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 311-12 (S.D.N.Y. 2012) (internal citation omitted); *accord Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). "[A]n intervening change of controlling law is a near-universally valid basis for bringing a motion for reconsideration." *In re Belton*, 2019 WL 1017293, at *2 (S.D.N.Y. Mar. 4, 2019)(Briccetti, J.) (citations omitted).

As noted above, on July 20, 2023, Plaintiff filed a Notice of Supplemental Authority, concerning the Second Circuit's issuance of its July 17, 2023 decision in *Sessa v. Trans Union, LLC*, 74 F.4th 38 (2d Cir. 2023).[2] ECF No. 195. The next day, July 21, 2023, this Court entered a summary order, *inter alia*, denying Chase's motion for summary judgment as to Plaintiff's FCRA claim. ECF No. 196. In its September 27, 2023 bench ruling, the Court set forth the basis of its decision on this claim under the standard set forth in *Sessa* – an inaccuracy that is "objectively and readily verifiable" – for pleading a violation of the FCRA. *See* Tr. at 15:12-24, 16:22-17:2. Given neither party had the opportunity to brief the impact of the Second Circuit's *Sessa* decision on Plaintiff's FCRA claim prior to the entry of the summary order, Chase moves for reconsideration of summary judgment based on the new *Sessa* standard.

## POINT II

**BASED ON THE COURT'S FINDING THAT THE AUTO LEASE IS AMBIGUOUS AS TO WHETHER PLAINTIFF OWED THE VEHICLE'S RESIDUAL VALUE AND CHASE HAD THE RIGHT TO CHARGE IT OFF, PLAINTIFF'S CHALLENGE OF THE CHARGE OFF <u>CANNOT MEET *SESSA*'S "OBJECTIVELY AND READILY VERIFIABLE" STANDARD</u>**

Because the Court determined that the Lease "does not clearly and unambiguously" entitle Chase to charge off the vehicle's residual value (with related fees and taxes) based upon Plaintiff's failure to purchase or return the vehicle at the Lease's end of term – despite the Court's finding

---

[2] Plaintiff's counsel Daniel Schlanger is also counsel of record to the plaintiff in *Sessa*.

that it "make[s] sense that if she kept the car, she would owe the value of the car to Chase" – Plaintiff's claim that Chase's reporting the charge-off was inaccurate does not meet the Second Circuit's "objectively and readily verifiable" standard for a valid FCRA claim. Accordingly, on reconsideration, the Court should grant Chase's motion for summary judgment as to the Second Amended Complaint's First Cause of Action.

In 2023, the Second Circuit decided two cases which established a new standard for determining actionability under the FCRA. The first case, *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 270 (2d Cir. 2023), involved an allegation by plaintiff that his student loan was privately funded and therefore dischargeable in bankruptcy. *Id.* at 266-67. Plaintiff relied upon an investor prospectus filed by the lender with the Securities and Exchange Commission describing the loan program as being "privately funded and separate from [the lender's] federally funded loan programs." *Id.* at 267. Defendant disputed this contention and asserted that the student loan was a government backed loan and therefore non-dischargeable. *Id.* at 266-67. In support of its motion for summary judgment, defendant pointed to language in plaintiff's loan promissory note and a sworn declaration from the lender that the subject loan issued "under a program that funded, in part, by nonprofit organizations, including governmental units" to substantiate its position that the loan was not dischargeable in bankruptcy. *Id.* at 267.

In deciding the motion, the Second Circuit articulated a threshold standard by which the alleged inaccuracy must be "objectively and readily verifiable" to be viable under the FCRA. *Id.* at 269. It also joined "[e]very other circuit to have considered an analogous question [in] agree[ing] [that] inaccuracies that turn on legal disputes are not cognizable under the FCRA." *Id.* at 270. In affirming summary judgment in favor of defendant, the *Mader* court recognized that to determine whether plaintiff's debt was discharged would require resolving the factual dispute over

6

the funding of the loan program by weighing the lender's sworn declaration against the investor prospectus, and "[t]he bespoke attention and legal reasoning required to determine the post-bankruptcy validity of [plaintiff's] debt means that its status is not sufficiently objectively verifiable to render [plaintiff's] credit report 'inaccurate' under the FCRA." *Id.* at 270.

Following *Mader*, the Second Circuit decided *Sessa v. Trans Union, LLC*, 74 F.4th 38 (2d Cir. 2023). In *Sessa*, plaintiff disputed Trans Union's reporting of a balloon payment at the end of the lease term for her car. *Id.* at 40. The district court granted summary judgment in favor of Trans Union on the grounds that whether plaintiff had a debt for a balloon payment under a car lease was a legal question and not a factual inaccuracy. The Second Circuit vacated, explaining that it was clear "as a matter of <u>fact</u>" that Sessa had no obligation to make such a payment. *Id.* at 43 n.7 (emphasis in original); *id.* at 41 ("[t]he lease's plain language did not require Sessa to make a balloon payment"). The Second Circuit clarified that the demarcation line under the FCRA is not legal versus factual inaccuracy, but rather "whether the information in dispute is objectively and readily verifiable." *Id.* at 43. Thus, where there is an "unresolved legal question" that requires "bespoke attention and legal reasoning," as in *Mader*, the claim is "non-cognizable under the FCRA." *Id.* at 43 (quoting *Mader*, 56 F.4th at 270).

Per the Second Circuit, *Sessa* "clarif[ies]" *Mader*. *Id.* at 43. In *Mader*, the Second Circuit held that "unresolved legal question[s]" cannot form the basis of an inaccuracy claim under the FCRA. *Mader*, 56 F.4th at 270. *Sessa* did not alter this holding, nor could it have, given that one panel cannot overrule another. *See Gelman v. Ashcroft*, 372 F.3d 495, 499 (2d Cir. 2004). Indeed, the *Sessa* court observed that "[t]he question of whether a debt is objectively and readily verifiable will <u>sometimes</u>, as it did in <u>Mader</u>, involve an inquiry into whether the debt is the subject of a legal dispute." 74 F.4th at 43 (emphasis in original). Plaintiff's dispute in *Sessa* was not the subject of

7

a legal dispute; it was objectively and readily verifiable "as a matter of fact" under the clear terms of her lease. *Id.* at 41, 43 n.7 (emphasis in original). Thus, in *Sessa*, the reporting was "factually inaccurate." *Id*. at 43 n.7 (emphasis in original). In contrast, plaintiff Mader's dispute was a "live legal dispute regarding" whether plaintiff actually owed the relevant debt or whether it was discharged in bankruptcy. *Id.* at 43. The *Sessa* holding is consistent with *Mader*: the *Mader* court similarly indicated that its "holding does not mean that credit reporting agencies are never required by the FCRA to accurately report information derived from the readily verifiable and straightforward application of law to facts." *Mader*, 56 F.4th at 270. In *Sessa*, that "readily verifiable" information was the unambiguous terms of the lease, which "provided for an option to purchase, not a required balloon payment." *Id*. at 43 n.7.

Here, the Court, in denying Chase's motion for summary judgment on Plaintiff's FCRA claim applied the "objectively and readily verifiable" standard confirmed in *Sessa*. *See* Tr., at 15:12-18. However, whereas the *Sessa* court recognized that its auto lease "plain[ly]" stated that Sessa was not required to make a balloon payment, the Court found that Lombardo's Lease "does not clearly and unambiguously provide that Lombardo would owe the residual value of the car if she kept it after her lease expired." *Id*. at 20:18-20; *see also id.* at 20:7-11 ("I do not think it is clear from the language of the lease that the full residual value of the car is due as part of – and I am quoting from the lease – 'other payments that may become due after the end of the lease term'"). As *Sessa* and other authority make clear, it is not possible to "objectively and readily verif[y]" an alleged credit reporting inaccuracy if the debt instrument upon which it is founded – here, like *Sessa*, an auto lease – is, based on the Court's finding, unclear and ambiguous.[3]

---

[3] In determining that the Lease is ambiguous as to Plaintiff owing the residual value, which Chase charged off based on her failure to purchase or return the vehicle at end of term (and, in fact, improperly kept the vehicle for nearly three months after the end of the extended term), the Court's

8

One decision, issued after briefing of Chase's summary judgment motion was complete, is particularly instructive. In *Ritz v. Nissan-Infiniti LT*, 2023 WL 3727892 (D.N.J. May 30, 2023), plaintiffs leased a Nissan vehicle from the furnisher-defendant Nissan Motor Acceptance Corporation ("NMAC"). *Id*. at *1. On the final day of the extended lease's term, plaintiffs went to the dealership to return the vehicle without an appointment or inspection. *Id.* at *2. After a contentious experience at the dealership, plaintiffs tossed the vehicle's keys on a desk and abruptly walked out, leaving the vehicle at the dealership without signing the odometer statement required by the lease. *Id.* Because the vehicle was not designated as "grounded" on the last day of the lease, plaintiffs were charged two additional monthly payments. *Id*. After receiving notice of the additional charges, plaintiffs complained, explained that they returned the vehicle on the last day of the extended lease term, and eventually returned to the dealership to sign the required odometer statement. *Id.*

---

bench ruling focuses exclusively on whether, pursuant to the Lease's Section 28 (titled "DEFAULT"), the full residual value of the car is due as part of "other payments that may become due after the end of the lease term." *See* Tr. at 19:19-24, 20:7-11. However, this is not the only Lease term entitling Chase to charge off the vehicle's residual value. First, per Section 41 of the Lease, Connecticut law, including the state's Uniform Commercial Code, governs. As set forth in Chase's original summary judgment papers, Connecticut General Statutes, §42a-2A-723, titled "Lessor's rights to residual interest", provides: "In addition to any other recovery permitted by this article or other law, a lessor may recover from a lessee an amount that will fully compensate the lessor for any loss of or damage to the lessor's residual interest in the goods caused by the lessee's default." Chase's 11-28-22 Memo of Law [ECF No. 170], at 25. The comments further provide: "**This section recognizes the right of the lessor to recover under this Article (as well as under other law) … for failure to return the goods at the end of the lease.**" *Id.* (emphasis added). Further, Section 28 of the Lease further states that "[i]f you are in default, we can then do any of the following after giving you any advance notice required by applicable law: (i) take *any reasonable measures* to correct the default or *to save ourselves from loss* …." *See* SOMF [ECF No. 169], at ¶3 (emphasis added). A reasonable measure to save Chase from suffering a loss resulting from Plaintiff neither purchasing nor returning the leased vehicle at end of lease term is charging off the residual value of the vehicle. These Lease terms and incorporated law entitled Chase to charge off the residual value of the vehicle that Plaintiff neither purchased nor returned by the end of the lease term. At the very least, given the Court's bench ruling, they raise a legal question which, in the context of an FCRA dispute, is not objectively and readily verifiable.

9

Following this, NMAC's customer service department submitted two "service requests" asking NMAC's credit bureau management team to remove the delinquency notation from plaintiffs' credit files, noting that the "[v]ehicle was returned 8/9/2019 but dealer grounded late." *Id.* at *3. However, due to a VIN-number typo, NMAC's credit bureau team did not process these requests. *Id.* Despite this, in response to a total of 14 automated consumer dispute verification (ACDV) forms received from the credit bureaus concerning the disputed delinquency notation, NMAC validated the delinquency status as accurate. *Id.* Thereafter, NMAC also transmitted a letter to plaintiffs confirming its validation decision was unchanged. *Id.* That same day, NMAC received a complaint from the Consumer Financial Protection Bureau (CFPB) concerning plaintiffs' dispute. *Id.* In response, NMAC's complaints department made a third request of its credit bureau team to remove the delinquency, which it did, directing the credit bureaus in an automated universal data (AUD) form to remove the delinquency from plaintiffs' credit reports. *Id.*

Plaintiffs subsequently filed an FCRA claim against NMAC, claiming it willfully or negligently violated the statute by reporting inaccurate or incomplete information to the credit bureaus and failing to investigate their claims. *Id.* at *1. In granting NMAC's motion for summary judgment, the district court held:

> The challenge for Plaintiffs is that their dispute turns on interpretations of 'possession' and 'return' under the lease…. Regardless of whether the conditions in the lease were met for assessing additional monthly charges, Plaintiffs' dispute concerns not 'patently incorrect' information, but rather the legal validity of an additional monthly charge. And that dispute can only be resolved by a court of law…. Thus, even if NMAC furnished information that turned out to be legally incorrect under some future ruling, NMAC's alleged legal error is an insufficient basis for a claim under the FCRA.
>
> Plaintiffs' strict reliance on the lease terms and witnesses' interpretation of them, in contesting NMAC's right to access additional monthly charges, only underscores

10

> the dispute's legal nature.  Indeed, Plaintiffs' briefing is replete with arguments that oft appear in breach-of-contract actions.

*Id.* at *6.  In other words, although not specifically decided under the *Mader* or *Sessa* standard, the district court found that the alleged inaccuracy turned on a legal interpretation of the auto lease and not on objectively and readily verifiable information.  The court also dismissed as evidence of an inaccuracy NMAC's customer service department having requested the delinquency notation's removal and NMAC ultimately submitting an AUD to the credit bureaus to remove the negative reporting, finding such actions "even when viewed in a light most favorable to Plaintiffs, do[ ] not change the dispute's legal nature." *Id.* at *7.

Likewise, Lombardo's focus on such matters as whether Chase's applicable written charge-off policies were flawed or she was adequately afforded the option to purchase the vehicle[4] cannot supplant the fact that the touchstone of her FCRA action – whether the Lease and the law incorporated by reference therein provides that she owed the residual value of the vehicle and Chase is entitled to charge-off such residual value – are legal disputes between the parties and not objectively and readily verifiable as a matter of fact.

Other recent court decisions also recognize that FCRA claims which spring from a lease or other debt instrument whose terms are the subject of dispute between its parties or deemed by a court to be unclear and ambiguous – and therefore are not objectively and readily verifiable – must fail as a matter of law.  *See*, *e.g.*, *Batterman v. BR Carroll Glenridge, LLC*, 829 Fed.Appx. 478,

---

[4] Based on the bench ruling, even these factual issues cannot be considered "objectively and readily verifiable," with the Court (i) drawing a "reasonable inference" that "delinquency for charge-off purposes is properly measured from the extended expiration date" based upon a *superseding* Chase charge-off policy which took effect several months *after* Lombardo's charge-off (Tr. at 17:18-18:1), and (ii) concluding a Chase pay-off letter "***could be read to imply*** that she had to pay the residual value merely to clear her debt to Chase, not purchase the vehicle, which is also ***not a remedy clearly provided in the lease***." *Id.* at 20:12-17 (emphasis added).

11

481 (11th Cir. Oct. 7, 2020)(affirming dismissal of FCRA action because plaintiff-tenant's claims stem not from any factually incorrect information in his credit report but rather ambiguity arising from the subject lease's "silen[ce]" as to what constitutes an uninhabitable apartment triggering termination of the lease and the tenant's consequent liability for liquidated damages); *Shulman v. Lendmark Financial*, 2022 WL 16700301, at *5 (D.S.C. Sept. 6, 2022)(granting furnisher's motion for summary judgment on FCRA claim where "furnisher's action cannot be considered negligent or willful where it provides information based on its interpretation of the contract provision, even if a dispute exists between the furnisher and the plaintiff over the terms of the contract"), *report and recommendation adopted*, 2022 WL 7967304, at *2 (D.S.C. Oct. 14, 2022)("[t]aking the facts in the light most favorable to Plaintiff does not mean simply accepting his version of the dispute … as a matter of law a violation of § 1681s-2(b) could not be based on a legal dispute over the terms of a contract such as the loan modification at issue here"); *Wilson v. Suntrust Bank, Inc.*, 533 F.Supp.3d 1363 (S.D. Ga. 2021)(granting furnisher's motion for summary judgment on FCRA claim challenging auto loan account's charge-off, court found "[t]he dispute at the heart of this action is thus one of interpretation of the Contract: was Plaintiff contractually obligated to continue making monthly payments on his loan after his insurance company paid two lump sums to [the furnisher]?  The answer to this question is clearly one of legal interpretation and not one of factual accuracy."); *Baldeosingh v. TransUnion, LLC*, 2021 WL 1215001, at *4 (M.D. Fl. Mar. 31, 2021)(dismissing FCRA action, court concluded that plaintiff's challenge of a reported charge-off concerning a lease-to-own appliance purchase "is really an unresolved contract dispute with the creditor"); *Cunningham v. Trans Union, LLC*, 2023 WL 6823182, at *3-4 (S.D. Ohio Oct. 11, 2023)(applying *Sessa* standard, court dismissed FCRA claim finding furnisher's reporting of

delinquency arising from lease agreement that plaintiffs contend was unenforceable is not "objectively and readily verifiable").[5]

Despite the Court observing that "it seems to make sense that if [Lombardo] kept the car, she would owe the value of the car to Chase," its ruling that the Lease "does not clearly and unambiguously provide that Lombardo would owe the residual value of the car if she kept it after her lease expired" requires the grant of summary judgment in Chase's favor on the FCRA claim. *See* Tr. at 20:6-7, 20:18-21. As *Mader*, *Sessa* and the forgoing caselaw makes clear, the FCRA claim cannot flow from a legal dispute over the terms of a contract, nor would such conflict over a legal interpretation give rise to an inaccuracy that is "objectively and readily verifiable."

Finally, as the Court recognizes, the failure to plead a *prima facie* inaccuracy is fatal to the FCRA claim and, as a matter of law, it becomes no longer necessary to consider the reasonableness of Chase's investigation.[6] *See* Tr. at 16:25-17:2 ("[t]he pertinent question here is whether

---

[5] In two of these decisions, the courts held that resolution of the contractual dispute is necessary before the consumer brings an FCRA claim. *See Batterman v. BR Carroll Glenridge, LLC*, 829 Fed.Appx. at 481 ("The Appellees could not have addressed these issues related to the amount of the [reported] debt until the legal issues surrounding the lease were resolved first"); *Baldeosingh v. TransUnion, LLC*, 2021 WL 1215001, at *5 ("[Plaintiff] needs to address the reported debt in a direct action against [the creditor], obtain a judgment invalidating the debt, and then report the judgment to [the credit bureau]. If at that point [the credit bureau] continues to report the debt, Plaintiff may then have a claim under the FCRA.")

[6] *See, e.g., Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022)("if there is no inaccuracy, then the reasonableness of the [furnisher's FCRA] investigation is not in play"); *Suluki v. Credit One Bank, NA*, 2023 WL 2712441, at *4, 6 (S.D.N.Y. Mar. 30, 2023)(same, quoting *Gross*, and, in granting furnisher's motion for summary judgment, holding that given plaintiff's failure to prove furnisher's reporting "was inaccurate as a matter of law … the reasonableness of [furnisher's] investigation would be moot"); *Wilson*, 533 F.Supp.3d at 1368 (in granting summary judgment, because plaintiff's FCRA claim is based on a disputed legal interpretation of an auto loan contract, "the Court need not address whether Defendant willfully or negligently reported factually inaccurate information or performed unreasonable investigations"); *Rosenberg v. Equifax Information Services LLC*, 2020 WL 4253063, at *3 (D.N.J. July 16, 2020)(in granting summary judgment, "[p]laintiff has not shown an inaccuracy in the credit report, and thus, the Court need not assess the reasonableness of Chase's investigation").

13

Lombardo has raised a trial issue as to the accuracy of the charge-off, *and if so*, the reasonableness of Chase's investigation")(emphasis added); *see also* 10-12-22 Transcript of Pre-Motion Conference [ECF No. 165-29], at 28:5-16 (wherein the Court states "You don't even have to get into the question of whether there was a reasonable investigation done…. [I]f it's not inaccurate, then it doesn't really matter what kind of an investigation they did.  You first have to show that there was a factual inaccuracy").  Accordingly, Plaintiff's failure to identify an inaccuracy that is objectively and readily verifiable under the *Sessa* standard renders the reasonableness of Chase's investigation moot.

## CONCLUSION

For the foregoing reasons, Chase requests that the Court, upon reconsideration, grant its motion for summary judgment as to the First Cause of Action of the Second Amended Complaint.

Dated:   October 25, 2023                                             Respectfully submitted,

 /s/Christopher B. Turcotte
Christopher B. Turcotte
TURCOTTE LAW, P.C.
575 Madison Avenue, Suite 1006
New York, NY 10022
(212) 937-8499
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

14