UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
LISA LOMBARDO, :
                        Plaintiff, :
v. : **OPINION AND ORDER**
                         :
                         : 20 CV 6813 (VB)
JPMORGAN CHASE BANK, N.A., :
                        Defendant. :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Lisa Lombardo, proceeding pro se,[1] brings this action against defendant JPMorgan Chase Bank, N.A. ("Chase"), alleging Chase violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., and the Connecticut Uniform Commercial Code, and breached the terms of an automobile lease agreement when it prematurely designated the lease as charged off on plaintiff's credit report. Chase and interested party Schlanger Law Group, LLP ("Schlanger"), plaintiff's former counsel, agree the parties settled this case in mediation; plaintiff disagrees.

Now pending are Chase's motion to enforce the parties' settlement agreement (Doc. #227) and Schlanger's motion to intervene (Doc. #273).

---

[1] Although courts generally "have an obligation to afford a special solicitude to pro se litigants, . . . it is not appropriate to afford pro se litigants special solicitude where a licensed attorney assisted in drafting their briefs, motions or other court documents." Askins v. Metro. Transit Auth., 2020 WL 108242, at *3 (S.D.N.Y. Mar. 5, 2020). Anthony Davis, Esq., and Jonathan Goldberg, Esq., of the law firm FisherBroyles LLP, under a limited scope of engagement, assisted plaintiff in preparing her opposition memorandum of law and supporting declaration. (Doc. #295 at 1 n.1). Accordingly, the Court will not afford plaintiff any special solicitude.

Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

1

For the reasons set forth below, Chase's motion is GRANTED and Schlanger's motion is DENIED as moot.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

The parties have submitted memoranda of law and supporting declarations and exhibits. Together, they reflect the following factual background.

Initially, plaintiff brought this case against defendants Equifax Information Services, LLC, Trans Union, LLC, Experian Information Solutions, Inc. (together, the "credit reporting agency defendants"), and Chase. Plaintiff settled with the credit reporting agency defendants, and those defendants were dismissed from the case in early 2022. (Docs. ##122, 131, 146). These settlements did not include any provisions or protections regarding how plaintiff would be taxed with respect to the portion of the settlements recoverable by Schlanger as attorneys' fees.

On July 21, 2023, the Court granted in part and denied in part Chase's motion for summary judgment (Doc. #196), following which the parties indicated they had engaged a retired state court judge to privately mediate their dispute (Doc. #208).

On January 14, 2024, the day before the scheduled mediation, plaintiff emailed Schlanger with her "acceptable low end" offer—i.e., the minimum amount she was willing to personally recover from a settlement, not including the portion of a settlement that would go to her attorneys. (Doc. #294-1). At the time, plaintiff understood Schlanger to have asserted its attorneys' fees were over $900,000. (Doc. #294 ("Pl. Decl.") ¶ 4).

On January 15, 2024, plaintiff, her attorneys Daniel A. Schlanger, Esq., and Stephanie Tatar, Esq., and defense counsel attended a daylong mediation session. Towards the end of the day, the mediator informed plaintiff and her counsel that Chase had made a final offer. In

plaintiff's own words: "I told Mr. Schlanger that I was willing to accept that number" (Pl. Decl. ¶ 6), and her counsel then "reported to the mediator" that Chase's offer "was acceptable and that the terms of the agreement were to be memorialized in writing. I specifically remember the mediator congratulating the attorneys, repeating [the number], and confirming that all settlement terms would be memorialized in writing after meditation" (id. ¶ 13). The mediator emailed Chase's counsel that night, stating "I am very pleased that we were able to settle this matter." (Doc. #228-3).[2]

However, plaintiff claims the foregoing did not constitute a binding settlement. First, she claims she told her attorneys she could not agree to a settlement at the mediation session because she did not agree to the proposed split of 20% of the total settlement amount going to her and 80% going to attorneys' fees. Mr. Schlanger and Ms. Tatar both claim she agreed to this split. Second, plaintiff claims she "made it clear to Schlanger at the last private break out session after the mediator gave us the last and best offer from Chase . . . that until all terms of the agreement were incorporated into a written agreement for my review and tax professional/s of my choosing, including material terms unresolved on January 15, 2024, I could not accept, or even properly consider, the monetary settlement offer proposed by Chase." (Pl. Decl. ¶ 12). Plaintiff claims Schlanger suggested they discuss with Chase the use of a qualified settlement fund (or "QSF") and the issuance of separate checks with separate tax forms. Mr. Schlanger, however, asserts use of a QSF was not discussed during the mediation because plaintiff told him "prior to the mediation that she had looked into it and did not want to use a QSF." (Doc. #301 ¶ 57).

---

[2] The Court does not specify herein the final settlement amount or the parties' settlement offers before and during the mediation, because that information is confidential and has previously been sealed. See United States v. Glen Falls Newspapers, Inc., 160 F.3d 853, 857 (2d Cir. 1998) (holding there is no presumptive right of access to settlement discussions and documents).

3

On January 17, 2024, the parties jointly filed a notice of settlement indicating they had "reached a settlement" and were "in the process of finalizing the relevant settlement documents." (Doc. #210). Plaintiff claims she learned of this filing the following week. (Pl. Decl. ¶ 15).

On January 18, 2024, Mr. Schlanger emailed defense counsel requesting two separate checks be issued as part of the settlement agreement—one to plaintiff for 20% of the total settlement amount, and the other to his law firm for the remaining 80%.

On January 22, 2024, plaintiff emailed Mr. Schlanger: "The 80% that you proposed to take from the Chase settlement seems out of the norm, especially in light of the previous settlements with the credit reporting agencies. Can you explain to me how you arrived at that figure?" (Doc. #294-2). Mr. Schlanger responded the next day, writing plaintiff agreed to that split at the mediation, and "[o]n this basis, you and I both approved the settlement at the end of the mediation." (Doc. #294-3).

Also on January 22, defense counsel emailed a draft written settlement agreement to Mr. Schlanger. Mr. Schlanger sent proposed revisions that same day, consisting primarily of: (i) adding a representation regarding Chase's reporting plaintiff's account to additional credit reporting agencies; (ii) limiting the confidentiality provision so that plaintiff could tell members of her immediate family about the settlement; and (iii) changes to the mutual releases provision. On January 31, 2024, defense counsel responded with a revised draft, in which he declined to expand Chase's reporting requirements beyond the three major credit bureaus other than adding Innovis, and further revised the confidentiality provision, including adding a definition of immediate family. Defense counsel and Mr. Schlanger exchanged two additional drafts between mid-February and mid-March 2024, negotiating language in the agreement's mutual release and

4

confidentiality provisions. Chase agreed to adopt Mr. Schlanger's proposed changes to both drafts.

On March 18, 2024, plaintiff's counsel sent plaintiff the final draft settlement agreement for her review and signature. The agreement contained a clause entitled "Merger, Integration and Amendment," which read: "The Parties acknowledge that the Agreement contains the entire agreement of the Parties with respect to the subject matter herein, that all prior oral or written statements, representations, and covenants are merged into this Agreement, and that any other agreements not expressly stated herein are void and have no further force and effect." (Doc. #231-5 at ECF 7).[3] The final draft settlement agreement did not address any tax protection language or a split regarding attorneys' fees.

Plaintiff claims she showed the March 18 draft to a tax advisor, who informed her the agreement would provide "no protection from me being taxed on the entire" settlement amount, and that plaintiff "was likely to incur more debt than value" from the agreement after paying taxes. (Pl. Decl. ¶ 22). Shortly thereafter, plaintiff suggested this could be solved if Chase issued separate Form 1099s to plaintiff and Schlanger for the amounts each would be paid under the settlement. On March 26, 2024, Mr. Schlanger discussed this proposal with opposing counsel, but Chase was ultimately unwilling to agree to such a provision because it believed "the tax laws required that Form 1099s for the full settlement amount be issued to both Plaintiff and Plaintiff's counsel." (Doc. #228 ¶ 14). Mr. Schlanger also proposed that Chase pay the settlement amount into a QSF, although Chase also rejected that proposal.

---

[3] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

Although plaintiff admits that the idea of a QSF or other tax protections "may not have been discussed with Chase directly during the mediation," she claims "upon information and belief, Chase knew that any settlement agreement would need to provide protection to Plaintiff so that she could receive some benefit from the settlement." (Doc. #295 at 7–8) (emphasis added). Chase, however, claims no such term was discussed at the mediation, and it had no knowledge of plaintiff's demand for such tax protections until March 26, 2024, two months after the mediation. (Doc. #228 ¶ 13).

## PROCEDURAL HISTORY

On April 19, 2024, plaintiff's counsel informed the Court that plaintiff no longer wished to finalize the settlement. (Doc. #216). At some point thereafter, plaintiff retained separate counsel ("plaintiff's fee dispute counsel") to advise her with respect to a dispute regarding the amount of plaintiff's counsel's legal fees.

On May 8, 2024, the Court conducted a case management conference. Plaintiff's counsel represented they had been in discussions with plaintiff's fee dispute counsel and that fee dispute counsel agreed plaintiff's rights regarding any fee dispute would be fully preserved and not prejudiced by finalizing the settlement agreement. Plaintiff's counsel also stated they were working with plaintiff's fee dispute counsel on a revised settlement agreement addressing plaintiff's tax concerns.

On June 6, 2024, plaintiff submitted an ex parte letter to the Court stating she did not wish to proceed with settlement and making numerous accusations regarding Mr. Schlanger's conduct as her attorney. Specifically, she alleged Mr. Schlanger failed to disclose pertinent information to her, unilaterally determined his legal fee, and pressured her to agree to a settlement. (Doc. #244 at 4).

6

On June 18, 2024, the Court conducted another case management conference at which Mr. Schlanger stated he could not oppose a motion to enforce the settlement in good faith and thus intended to move to withdraw as counsel and join Chase's motion to enforce the settlement. The Court set a briefing schedule for the two motions and directed that Chase's motion be filed first, to be followed by Schlanger's motion to withdraw if Mr. Schlanger still believed he could not defend against Chase's motion.

On July 16, 2024, Chase filed its motion to enforce the parties' settlement agreement. (Doc. #227).

On August 7, 2024, Schlanger filed a motion to withdraw as plaintiff's counsel. (Doc. #239). On November 7, 2024, the Court granted Schlanger's motion to withdraw and granted Schlanger a charging lien, in an amount to be determined. (Doc. #270).

On December 2, 2024, Schlanger moved to intervene for purposes of joining Chase's motion to enforce, and to submit papers in support of Chase's motion. (Doc. #273).

The instant motions were fully submitted on February 11, 2025.

## DISCUSSION

I.   Motion to Enforce Settlement Agreement

   A.   Legal Standard

"A settlement agreement is a contract, no different in principle from any other. It arises once the parties reach complete agreement with intention to be bound." Lee v. Hosp. for Special Surgery, 2009 WL 2447700, at *2 (S.D.N.Y. Aug. 11, 2009) (citing Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985)). Although parties may reach a settlement agreement orally, general principles of contract law require the parties to intend to be bound by the terms before an agreement can be enforced. See Powell v. Omnicom, 497 F.3d 124, 128–29

7

(2d Cir. 2007). This requirement prevents litigants from trapping themselves "in surprise contractual obligations that they never intended." Adjustrite Sys., Inc. v. GAB Business Servs., Inc., 145 F.3d 543, 548 (2d Cir. 1998).

"Unlike many other acts that an attorney undertakes on a client's behalf, the decision to settle or otherwise dismiss claims rests with the client and is not automatically bestowed on retained counsel." Gomez v. City of New York, 805 F.3d 419, 424 (2d Cir. 2015). "Although we presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so, this presumption is rebuttable." Id. The party disputing his or her attorney's authority "bears the burden of proving by affirmative evidence that the attorney lacked authority." In re Artha Mgmt., Inc., 91 F.3d 326, 329 (2d Cir. 1996). "In circumstances where a former attorney and his client dispute the giving of authority, courts generally require the holding of an evidentiary hearing on the question of authorization." Gomez v. City of New York, 805 F.3d at 424.

An attorney's "actual authority may be inferred from words or conduct which the principal has reason to know indicates to the agent that he is to do the act." United States v. Int'l Bhd. of Teamsters, 986 F.2d 15, 20 (2d Cir. 1993). "By contrast, apparent authority 'is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestation.'" Gomez v. City of New York, 704 F. App'x 25, 26 (2d Cir. Dec. 1, 2017) (summary order) (quoting Restatement (Third) of Agency § 2.03 (2006)).

"The intention of the parties on this issue is a question of fact, to be determined by examination of the totality of the circumstances." Ciaramella v. Reader's Digest Ass'n, Inc., 131

8

F.3d 320, 322 (2d Cir. 1997). "A party seeking to enforce a purported settlement agreement has the burden of proof to demonstrate that the parties actually entered into such an agreement." Benicorp. Ins. Co. v. Nat'l Med. Health Card Sys., Inc., 447 F. Supp. 2d 329, 335 (S.D.N.Y. 2006). "Where a party has entered into an oral agreement to settle, the party cannot avoid the settlement by refusing to sign the papers that would memorialize the terms of the agreement that were reported to the court." U.S. Fire Ins. Co. v. Pierson & Smith, Inc., 2007 WL 4403545, at *3 (S.D.N.Y. Dec. 17, 2007). Accordingly, an oral settlement agreement to which a party intended to be bound "is binding and conclusive . . . even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing." Elliot v. City of New York, 2012 WL 3854892, at *2 (S.D.N.Y. Sept. 5, 2012).

B.   Agreement at Mediation

To the extent plaintiff argues Schlanger did not have actual or apparent authority to reach a settlement on her behalf at the mediation, the Court disagrees.

Plaintiff was present at the mediation when Schlanger agreed, on her behalf, to Chase's final offer, and when the mediator recited this agreement to the parties. But she did not make any statement expressing that her acceptance was conditional upon additional terms. Courts may find apparent authority when the principal "remained silent when [s]he had the opportunity of speaking and when [s]he knew or ought to have known that [her] silence would be relied upon." Sci. Holding Co. v. Plessey Inc., 510 F.2d 15, 25 (2d Cir. 1974); see also Restatement (Third) of Agency § 1.03 cmt. b (2006) ("Silence may constitute a manifestation when, in light of all the circumstances, a reasonable person would express dissent to the inference that other persons will draw from silence."). Plaintiff "did not speak to the mediator and the mediator did not speak to" her. (Pl. Decl. ¶ 13). Although plaintiff claims the agreement was "contingent upon agreement

9

to the other terms (including the fee split) being put in a writing to be signed" (id.), she does not claim that she, or anyone else, raised these issues to Chase at the mediation. This evidence thus demonstrates there is no genuine dispute as to Schlanger's apparent authority here.

These circumstances differ from other cases in which the Second Circuit has recognized genuine disputes as to an attorney's authority to settle. For instance, the Circuit has found a dispute existed when the plaintiff was not present when his counsel settled his claims and signed a stipulation without prejudice. See Gomez v. City of New York, 805 F.3d at 421–22. Similarly, the Circuit found a plaintiff's attorney did not have apparent authority to settle when "a settlement agreement was reached in a telephone conference by counsel in which no party participated and [the plaintiff] made prompt objections to that agreement upon being advised as to its terms." Fennel v. TLB Kent Co., 865 F.2d 498, 503 (2d Cir. 1989). Here, by contrast, plaintiff did not raise an issue with the settlement until two months after the mediation. Courts regularly find such delays are "fatal" to a party's claim that their attorney "lacked apparent authority." Hillair Cap. Invs., LP v. Smith Sys. Transp., Inc., 640 F. App'x 49, 52 (2d Cir. Feb. 10, 2016) (summary order); see also Hallock v. New York, 64 N.Y.2d 224, 229 (1984) (holding party "cannot be heard to challenge the settlement" when "at no time during negotiation of the settlement or dictation of the agreement into the record—or indeed during the more than two months that followed—did [he] voice an objection").

Based on the undisputed evidence, the Court thus finds Schlanger had apparent authority to enter into a settlement agreement at the mediation. Because that is sufficient, the Court need not hold an evidentiary hearing to determine whether Schlanger had actual authority.

C.       Enforcement of the Agreement at Mediation

Chase argues the Court should compel enforcement of the oral agreement reached at the mediation.

The Court agrees.

The Second Circuit has adopted a four-factor test to determine whether a party intended to be bound by the terms of an oral or unsigned settlement agreement: whether (1) "there has been an express reservation of the right not to be bound in the absence of a writing"; (2) "there has been partial performance of the contract"; (3) "all of the terms of the alleged contract have been agreed upon"; and (4) "the agreement at issue is the type of contract that is usually committed to writing." Winston v. Mediafare Entertainment Corp., 777 F.2d at 80. Although no single factor is dispositive, the first factor "is frequently the most important." Brown v. Cara, 420 F.3d 148, 154 (2d Cir. 2005).

1.       Express Reservation

The first, and most important, factor clearly favors enforcing the contract. Plaintiff does not claim she or Schlanger made an express reservation of the right not to be bound in the absence of a writing, to either Chase or the mediator. Rather, according to plaintiff, the mediator confirmed that all settlement terms "would be memorialized in writing after mediation." (Pl. Decl. ¶ 13) (emphasis added).

"Even if parties to an oral settlement agreement contemplate memorializing that agreement in a formal written document that is intended to be subsequently executed, they will still be bound by the oral agreement." U.S. Fire Ins. Co. v. Pierson & Smith, Inc., 2007 WL 4403545, at *3 (citing V'Soske v. Barwick, 404 F.2d 495, 499 (2d Cir. 1968)). Indeed, plaintiff's use of the word memorialize "does not suggest an intent not to be bound without the

11

documentation, but rather 'that the settlement's reduction to writing was only a formality.'" Elysium Health, Inc. v. ChromaDex, Inc., 2023 WL 7037442, at *3 (2d Cir. Oct. 26, 2023) (summary order) (quoting Powell v. Omnicom, 497 F.3d at 130).  More importantly, plaintiff's account of the mediation does not reflect any statement or action that expressly reserved the right not to be bound in the absence of a writing.

In addition, the parties' notice of settlement stated the parties "have reached a settlement" and all that was left was "finalizing the relevant settlement documents."  (Doc. #210).  "Because there were no references to proposed settlement or proposed stipulations of settlement," the "actions of all the parties in communicating the settlement to the Court evince[] an intent to be bound."  Walker v. City of New York, 2006 WL 1662702, at *8 (E.D.N.Y. June 15, 2006).

Plaintiff argues this factor nevertheless leans in her favor because defense counsel referred to the first written draft as the "proposed Settlement Agreement" (Doc. #228-4), analogizing to the Second Circuit's finding in Winston v. Mediafare Entertainment Corp., 777 F.2d at 81, that an exchanged "proposed agreement" indicated the parties did not intend to be bound by their oral agreement.  Id.  There, however, "the draft was circulated before the parties purportedly reached an agreement to settle," whereas here, the parties agreed to settle "before any draft written settlement agreement was circulated."  In re Lehman Bros. Holdings, Inc., 739 F. App'x 55, 57 (2d Cir. July 18, 2018) (summary order).

Moreover, the presence of a merger clause in the draft settlement agreement does not "prove the parties' intent not to be bound at the time that they reached their oral agreement during the settlement conference."  Acun v. Merrill Lynch, Pierce, Fenner and Smith, 2020 WL 995887, at *3 (S.D.N.Y. Mar. 2, 2020); see also Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 445 (2d Cir. 2005) (noting merger clauses may "suggest that a signing was envisioned, but

12

they do not establish that the obligations imposed by the contract were <u>contingent upon</u> the signing") (emphasis in original). Although plaintiff cites cases in which courts interpreted a merger provision as weighing against enforcement of the contract, those cases involved provisions that specifically stated the settlements were not effective until signed by both parties.[4] Here, by contrast, the draft settlement agreement contained no provision implying an agreement was reached only once the written document was fully executed.

Accordingly, the first <u>Winston</u> factor strongly favors enforcing the settlement agreement.

### 2. Partial Performance

The second factor weighs in favor of neither party. "Courts have considered various factors that indicate partial performance, including payment of at least some part of the settlement amount, and mutual cessation of litigation activities." <u>Xie v. Caruso, Spillane, Leighton, Contrastano, Savino & Mollar, P.C.</u>, 632 F. Supp. 3d 262, 268 (S.D.N.Y. 2022). Although the Second Circuit has found no evidence of partial performance if the defendant "paid no money to [plaintiff] before the district court ordered the settlement enforced," <u>Ciaramella v. Reader's Digest Ass'n, Inc.</u>, 131 F.3d at 325, a panel of that court observed that partial performance may be found when "the only performance required" under the proposed settlement

---

[4]   See <u>Ciaramella v. Reader's Digest Ass'n, Inc.</u>, 131 F.3d at 324 (proposed agreement stated it "shall not become effective" until signed by all the parties); <u>Kaczmarcysk v. Dutton</u>, 414 F. App'x 354, 355 (2d Cir. Feb. 22, 2011) (summary order) ("proposed settlement agreement provides that '[t]his agreement is effective when it has been fully executed by all parties'"); <u>Williams v. Playscripts, Inc.</u>, 2024 WL 3823198, at *4 (E.D.N.Y. Aug. 13, 2024) ("draft agreement provided that the 'settlement would not be effective until executed by all the parties and their attorneys'"), <u>adopting report and recommendation</u>, 2024 WL 4043739 (E.D.N.Y. Sept. 4, 2024); <u>Stewart v. City of New York</u>, 2017 WL 4769396, at *2 (S.D.N.Y. Oct. 20, 2017) (proposed agreement stated "IT IS <u>HEREBY</u> STIPULATED AND AGREED" and "with the intent to be legally bound <u>hereby</u>"), <u>adopting report and recommendation</u>, 2017 WL 5897442 (S.D.N.Y. Nov. 28, 2017).

"was that defendant pay the settlement amount," Jackson v. Heidelberg L.L.C., 296 F. App'x 102, 103 (2d Cir. Sept. 16, 2008) (summary order).

First, that Chase has not paid plaintiff any part of the purported settlement weighs slightly against enforcement. Here, although the only performance required was payment of the lump sum settlement amount, that is complicated by Schlanger's request that Chase issue separate checks to it and to plaintiff. As such, this posture could be interpreted in favor of either party.

Second, that Chase sent plaintiff a draft agreement memorializing the oral agreement reached at the mediation slightly favors enforcement. See Acun v. Merrill Lynch, Pierce, Fenner & Smith, 2020 WL 995887, at *3 (defendant's provision of draft agreement to plaintiff "slightly favors enforcement" of a settlement reached at a settlement conference and recited on the record).

Finally, that the parties communicated the settlement to the court and abandoned litigation activities "does not weigh for or against enforcing the contract." Conway v. Brooklyn Union Gas Co., 236 F. Supp. 2d 241, 250 (E.D.N.Y. 2002).

Accordingly, this factor does not weigh for or against enforceability.

    3.    <u>Agreement on All Material Terms</u>

The third factor weighs in favor of enforcement.

At the conclusion of the mediation, Mr. Schlanger told the mediator that Chase's final offer was acceptable, and that the agreement would be memorialized in writing. The mediator reported this back to the parties, restated the amount of the settlement, and confirmed the agreement would be memorialized in writing. There is no indication in the record, however, that plaintiff's concerns regarding attorneys' fees and tax protections were material to the agreement reached at the mediation, let alone necessary conditions to an agreement.

First, any dispute regarding the proposed split of attorneys' fees is not a material term of plaintiff's settlement agreement with Chase. See Moore v. Consol. Edison Co. of N.Y., 2007 WL 2728657 (S.D.N.Y. Sept. 19, 2007) (holding settlement agreement enforceable and "fee dispute by [plaintiff's counsel] and his former client is completely ancillary to this action"). Although the split may be relevant to plaintiff's decision of whether to settle, and material to her agreement with Schlanger, it is outside the scope of the agreement between plaintiff and Chase and thus immaterial to their agreement. This interpretation is bolstered by the fact that plaintiff, by her own admission, did not raise this issue with the mediator or Chase, but only privately with her counsel.

Second, tax protections were not a material term of the oral settlement agreement reached at the mediation. As an initial matter, plaintiff does not claim that the use of a QSF trust was mentioned during the mediation. (Pl. Decl. ¶ 25). However, plaintiff claims, "upon information and belief," that Chase knew the tax issue was a material term. (Id.). This claim is not adequately supported in the record and is belied by the fact that no such term was present in the draft settlement agreements exchanged between defense counsel and Schlanger, nor was it present in plaintiff's prior settlements with the credit reporting bureaus.

Finally, defense counsel and Mr. Schlanger exchanged five drafts of the proposed settlement agreement between them before sending a purported final draft to plaintiff for her execution. In those drafts, they negotiated over: (i) a representation regarding Chase's reporting plaintiff's account to additional credit reporting agencies; (ii) the confidentiality provision; and (iii) the mutual release provision. None of these drafts demonstrates the parties had not agreed on all material terms at the mediation, or that attorneys' fees and tax protections were material terms to any settlement agreement.

Accordingly, this factor weighs in favor of enforcement.

    4.    <u>Agreement Usually Committed to Writing</u>

Finally, the fourth factor weighs slightly in favor of plaintiff. "Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." <u>Ciaramella v. Reader's Digest Ass'n, Inc.</u>, 131 F.3d at 326. That said, courts may consider "the complexity of the underlying agreement" in analyzing this factor. <u>Id</u>.

Here, the underlying agreement is relatively simple. It is only six pages long, consists of generally boilerplate language, and primarily involves the release of plaintiff's claims in exchange for a lump sum payment. On the other hand, both Mr. Schlanger and the mediator were clear that the settlement would be memorialized in writing, and that understanding was affirmed by defense counsel preparing a draft agreement within a week of the mediation. Moreover, that draft agreement included written provisions regarding confidentiality and credit report clearing that, while not material (and not in dispute) here, were not clearly addressed at the mediation.

However, the Court is not persuaded by plaintiff's argument that "the best evidence of the complexity of the agreement is that counsel was seemingly unable to draft adequate protections for Ms. Lombardo" (Doc. #295 at 13), because, as discussed above, that was not a material term. Rather, the evidence suggests it was a post-mediation demand by plaintiff to which Chase ultimately did not agree.

The Court thus finds that, although this agreement was not complex, it is the type usually committed to writing. Accordingly, this factor weighs slightly against enforceability.

16

\* \* \*

In sum, two factors weigh in favor of enforcement, with the first and most important factor weighing strongly in that direction; one factor weighs slightly against enforcement; and one factor is neutral. Having considered and balanced the <u>Winston</u> factors on the whole, the Court concludes the parties reached a binding settlement agreement at the mediation, and the contract should be enforced.

Accordingly, Chase's motion to enforce the settlement agreement must be granted.

II.     <u>Motion to Intervene</u>

Schlanger seeks to join Chase's motion to enforce the settlement pursuant to Fed. R. Civ. P. 24, or, in the alternative, to have its brief, declarations, and other supporting documents submitted in connection with Chase's motion to enforce without formal intervention.

Under Rule 24, the Court "<u>must</u> permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a) (emphasis added). The Court also "<u>may</u> permit anyone to intervene who (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." <u>Id</u>. 24(b)(1).

In her opposition, Plaintiff does not address Schlanger's arguments regarding intervention, instead treating Schlanger's papers as supporting Chase's motion to enforce. (<u>See</u> Doc. #295 at 14). Because the Court is granting Chase's motion to enforce, and has relied on the

17

materials submitted by Schlanger, it need not decide whether Schlanger has a formal right to intervene, either as of right or by permission, under Rule 24.

In addition, plaintiff does not address Schlanger's anticipatory arguments regarding fraudulent inducement and coercion. Because the Court has already found an agreement was formed at the mediation, as discussed above, it need not address these arguments.

Accordingly, Schlanger's motion to intervene is moot.

However, the Court's decision relates only to enforcement of the settlement reached at the mediation between plaintiff and Chase. The Court comes to no conclusions regarding the fee dispute between plaintiff and Schlanger.

## CONCLUSION

Chase's motion to enforce the parties' settlement agreement is GRANTED.

Schlanger's motion to intervene is DENIED.

Plaintiff and Schlanger are instructed to discuss their fee dispute in light of the Court's ruling, including (i) whether they can come to an agreement regarding attorneys' fees, (ii) whether a settlement conference before a magistrate judge would be helpful in resolving these issues, and (iii) the proper mechanism for resolving the fee dispute if they are unable to reach a resolution.

By March 27, 2025, plaintiff and Schlanger shall submit a joint letter indicating the status of these discussions. The letter should be filed by Mr. Schlanger.

A case management conference is scheduled for April 3, 2025, at 11:00 a.m., at which both plaintiff and Mr. Schlanger are instructed to appear. At the conference, the Court intends to address the status of plaintiff and Schlanger's discussions regarding attorneys' fees, and whether this Court can and should exercise ancillary jurisdiction over the fee dispute.

Chase shall not perform its obligations under the agreement—i.e., make a lump sum payment to plaintiff or Schlanger—until after the Court has determined if and how the fee dispute will be resolved.

The Clerk is instructed to terminate the motion to intervene. (Doc. #273).

Chambers will mail and email a copy of this Opinion and Order, and all unpublished decisions cited herein, to plaintiff at the address on the docket.

Dated: March 5, 2025
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge